## Kelly et al. v. Shacklette et al.

April 24, 1942.

B. M. Harwood for appellants.

B. B. Melvin for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Dismissing appeal.

Five of the six plaintiffs and appellants were candidates for the office of trustees of the town of Jeffersontown in Jefferson County at the regular 1941 election in November of that year; whilst the other plaintiff and appellant (F. R. Thatcher) was a candidate for the office of police judge of the town. In the same election five of the defendants and appellees were opposing candidates for the office of its trustees; whilst defendant and appellee,

Reid Martin, was a candidate for its police judge. On November 13, 1941, plaintiffs (appellants here) jointly filed this contest action against defendants, and appellees here, in the Jefferson Circuit Court alleging in their petition the fact of their respective candidacies and those of defendants, and they averred in their petition that they had filed their respective pre-election expense accounts as required by law with the county court clerk of Jefferson County. They then alleged that "defendants claim they were elected to the respective offices for which they were candidates in said election, notwithstanding the fact the filing of said statements with the proper official is an indispensable prerequisite to the acceptance or holding of the said offices for which they were candidates, and said failure (which was also alleged) to file said statement was a violation of a mandatory provision of the said Corrupt Practice Act." They then prayed, not that they be declared entitled to the respective offices, but that the election "be adjudged null and void," and that a writ of election be issued to fill the vacancies.

Defendants demurred especially to the petition for defective parties plaintiff and defendant. Without waiving it they moved that plaintiffs elect which plaintiff should prosecute the suit and against which defendant. They then moved that five of the named plaintiffs, and five of the named defendants, be stricken as parties to the litigation. Such motions we conclude were upon the theory that plaintiffs could not join in one action for the relief sought, nor could they join all of the defendants in such action. But however that may be, the court overruled the special demurrer and also the other two motions, which was followed by defendants filing a general demurrer to the petition which the court sustained. The sustaining order did not dismiss the petition, but it is recited in other and subsequent parts of the record that such an order of dismissal was made by the court and the parties have treated the case as if the petition had been dismissed by the court, and we will treat the order as a final one dismissing the petition.

The transcript of the record, in prosecuting this appeal, was filed in this court within the thirty days required by the statute in which to prosecute an appeal in such actions, but the trial court never granted an appeal from the judgment at any time, although a motion was made for that purpose but never acted on. Neither has

any application ever been made in this court for the granting of an appeal, even if we possess authority to do so. The transcript therefore has been filed in this court without the granting of any appeal by this or any other court.

Section 1596a-12 is our statute for contesting general elections, a part of which—prescribing for an appeal to this court—says: "Either party may appeal from the judgment of the circuit court to the Court of Appeals by giving bond before the Clerk of the Circuit Court, with good surety, conditioned for the payment of all costs and damages the other party may sustain by reason of the appeal and by filing the record in the Clerk's office of the Court of Appeals, within thirty days after final judgment in the circuit court."

Section 734 of our Civil Code of Practice prescribes how appeals to this court from the trial court may be taken in cases generally, one requisite of which is that an appeal shall be granted by the trial court and the appellant may perfect it by filing the transcript in this court—under the provisions of Section 738 of the same Code—"twenty days before the first day of the second term of said [this] court next after the granting of the appeal," unless the time be extended for good cause. If the time is not extended, or if the appeal is not taken under the order granting it by the trial court within the extended time, then the appeal must be granted by this court upon the filing of the transcript therein within the prescribed period of two years for the bringing of appeals to this court. Such provisions, we repeat, are applicable to all appeals generally. The cases of Imperial Bank v. Bruner, 138 Ky. 746, 129 S. W. 95; Wright's Adm'r v. Lexington, etc., R. Co., 111 Ky. 690, 64 S. W. 675, 23 Ky. Law Rep. 952; and Ruddle v. Summers, 57 S. W. 609, 22 Ky. Law Rep. 488 cited to the text in 3 Corpus Juris, page 1078, Section 1088—declare that the provision for the granting of an appeal, before it may be considered by the appellate court, is mandatory, and that a transcript filed without the granting of an appeal by the proper court is not sufficient to give the appellate court jurisdiction to review the judgment from which the appeal is attempted to be taken. See, also, 4 C. J. S., Appeal and Error, Section 463. But, of course, it would be competent for the Legislature to prescribe different methods applicable to specific cases; and especially so in

cases of specific and special remedies created by the Legislature in certain classes of litigation.

At common law there was no other remedy except Quo Warranto for the contest of elections; but almost, if not all, of the states have enacted remedies for such relief, ours being contained in the section supra of our statute. In the text of 20 Corpus Juris, page 265, Section 383, it is said: "Proceedings for review of election contests are governed by statutes relating specifically to such proceedings, or, in the absence of any specific provisions, by the statutory rules applicable to civil cases generally." See, also, 29 C. J. S., Elections, Section 310. On page 263, Section 381, 20 Corpus Juris, 29 C. J. S., Elections, Section 308, the text also says that: "No right of appeal exists in election contest cases unless conferred by some constitutional or statutory provision," and that ordinarily the rules governing appeals generally do not apply to such proceedings when the contest statute, or constitutional provision, enacts otherwise.

From the excerpt supra as a part of our contest statute the conclusion might be drawn that in contest election proceedings no granting of an appeal by any court is necessary in order to give the appellate court jurisdiction of the appeal, since the statute does not expressly so prescribe. However the excerpt supra from our statute relates mainly to the question of time within which the appeal may be taken. In the text supra on page 265 of the volume of Corpus Juris referred to, it is said that appeals in election contest proceedings are governed— in the absence of specific provisions—"by the statutory rules applicable to civil cases generally." A number of cases in note 32 are cited in support of that text. The statute does not in terms dispense with granting appeals.

It is, therefore, our interpretation that appeals in election contest cases should first be preceded by the granting of an appeal by the trial court, since an appeal granted by it entitles the appellant to file the transcript in this court twenty days before the second term of this court after the appeal is granted by the trial court; or, in other words, that the prerequisite of a prior granting of an appeal prevails in election contest cases the same as in cases appealed generally to this court. That interpretation of our contest statute not only conforms to the declared law to which we have referred, but it also im-

poses no burden on appellants in such cases, and also affords a greater degree of fairness to appellees by informing them that an appeal is contemplated and will probably be prosecuted. Appellants, therefore, having failed to obtain the granting of an appeal, it follows that the transcript should be stricken and the attempted appeal dismissed.

But, there is another reason why the attempted appeal should be so disposed of as to all of the defendants and appellees except the one of Ben B. Kelly v. Dr. J. R. Shacklette, and which reason is, that the supersedeas bond was executed by Kelly alone (with his surety) to only Dr. J. R. Shacklette as the sole obligee. In the cases of Barker v. Blenkenship, 271 Ky. 213, 111 S. W. (2d) 592; Kinner v. Zachem, 273 Ky. 758, 117 S. W. (2d) 943; Stafford v. Bailey, 282 Ky. 525, 138 S. W. (2d) 998; and in others referred to in those opinions, it was held by us that not only was the execution of the required supersedeas bond provided for in our contest statute a jurisdictional requirement, but that the bond in order to conform to the requirements of the statute should be specific as to its contents, as set out in the statute, as well as in naming the obligee therein so as to make the appeal effectual as to him. Therefore no one not named in the bond as obligee may be considered as an appellee in this court; and, of course, if no obligee was named in the bond, then this court would be without authority to consider the appeal as to any of the parties to the litigation. So that in any event we are without jurisdiction of the attempted appeal in this case, except as against the defendant, Dr. J. R. Shacklette, the only obligee, as we have seen, named in the supersedeas bond. However, since no appeal was granted by any court as to him—as is hereinbefore pointed out—we are without authority to review the judgment in his favor.

Wherefore, for the reasons stated, the alleged appeal is dismissed as to all of the purported appeals and the transcript is stricken from the record.